623 F.Supp. 148 (1985)
STAUFFER CHEMICAL COMPANY, Plaintiff,
v.
MONSANTO COMPANY, Defendant.
No. 84-1660-C(4).
United States District Court, E.D. Missouri, E.D.
June 18, 1985.
Order July 18, 1985.
*149 Rudolf Hutz, Connolly, Bove, Lodge & Hutz, Wilmington, Del., John H. Quinn, Armstrong, Teasdale, Kramer & Vaughn, St. Louis, Mo., Howard Kothe, Westport, Conn., for Stauffer Chemical Co.
Phillip I. Morse, Coburn, Croft & Putzell, St. Louis, Mo., Wm. D. Harris, Richards, Harris, Medlock & Andrews, Dallas, Tex., Jean E. Jones, St. Louis, Mo., Tom Arnold, Arnold, White & Durkee, Houston, Tex., Howard Stanley, St. Louis, Mo., for Monsanto Co.

MEMORANDUM AND ORDER
CAHILL, District Judge.
This matter comes before the Court on plaintiff's motion to compel discovery.
The discovery which plaintiff seeks to undertake deals specifically with the statutory requirements for obtaining a retroactive foreign license. See 35 U.S.C. § 184. Section 184 requires that a license be obtained prior to the filing of a patent application in any foreign country. If, inadvertently, a patent application is filed overseas without the necessary license, the statute provides for the issuance of a retroactive license.
Stouffer has challenged the validity of Monsanto's patent based on Monsanto's alleged violation of § 184. Specifically, Stouffer argues that Monsanto obtained its retroactive foreign filing license by committing fraud on the Patent Office. According to Stouffer, Monsanto withheld vital information from the Patent Office which, if disclosed, would have resulted in the denial of Monsanto's license request. The discovery requests made by Stouffer for the most part relate to the alleged fraudulent conduct of Monsanto.
Monsanto has resisted all discovery requests dealing with its procurement of the foreign filing license. It is Monsanto's position that Stauffer has no standing to challenge the Commissioner's discretionary decision to grant Monsanto a retroactive foreign license. Monsanto further argues that the Patent Code does not make invalidity under § 185 a defense to an infringement action. In the alternative, Monsanto argues that if it is determined that Stouffer does in fact have standing to challenge the validity of its patent, pursuant to §§ 184 and 185, the information that Stouffer seeks is still nondiscoverable by virtue of the attorney/client work-product privilege exceptions.
This Court, upon careful consideration of all the documents and memoranda presented by both parties, comes to the following conclusion with respect to Stouffer's discovery requests.

Standing.
In order for this Court to have jurisdiction to proceed on a particular matter, the Court must first have before it a plaintiff with standing. See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962); see also Flast v. Cohen, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968). In order for a plaintiff to have standing, the individual must present the Court with a live case or controversy. Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 151-52, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970). The plaintiff must demonstrate to the Court that it has suffered "a distinct and palpable injury, that is fairly traceable to the challenged conduct." See Duke Power Company v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 72, 98 S.Ct. 2620, 2629-30, 57 L.Ed.2d 595 (1978); Warth v. Seldin, 422 U.S. 490, 498-99, 95 S.Ct. 2197, 2204-05, 45 L.Ed.2d 343 (1975). The plaintiff must allege a personal stake in the outcome of the litigation, so as to assure that the issues will be presented in an adversarial posture, which will in turn result in a sharp presentation of the issues being brought before a particular court. *150 See Baker v. Carr, 369 U.S. at 204, 82 S.Ct. at 703; Flast v. Cohen, 392 U.S. at 99, 88 S.Ct. at 1952.
In addition to the Article III standing requirements that are imposed upon a particular plaintiff, the courts themselves have placed prudential limits on standing, requiring that a plaintiff who seeks to redress statutory violations demonstrate that the interests sought to be protected fall within the zone of interests to be protected or regulated by the statute. See Association of Data Processing Service Organizations, Inc., 397 U.S. at 153, 90 S.Ct. at 829 (1970); Taylor v. Jones, 653 F.2d 1193, 1207 (8th Cir.1981). When determining the zone of interests that a particular statute protects or regulates, the Court is mindful of the fact that the purpose of the zone of interest test was to expand the number of individuals who could challenge alleged violations of a statute. See Autolog Corporation v. Regan, 731 F.2d 25, 30 (D.C.Cir. 1984).
In support of its argument that the plaintiff lacks standing to challenge the discretionary decision of the Commissioner, the defendant directs the Court's attention to Torin Corp. v. Philips Industries, Inc., 89 F.R.D. 346, 350 (S.D.Oh.1981). In Torin, the Ohio district court ruled that the determination of inadvertence is "legislatively delegated to the Commissioner." Torin, 89 F.R.D. at 350. The court in Torin further stated that the most appropriate method for challenging the validity of the issuance of a foreign license would be an independent action against the Commissioner. See Torin, 89 F.R.D. at 351. While the Court agrees that normally due deference should be accorded to the Commissioner's determination of inadvertence, it is the opinion of the Court that a party need not be restricted to bringing a direct action against the Commissioner when seeking to challenge the validity of a foreign filing license. A review of § 282 of the Patent Code leads the Court to come to this conclusion. Section 282 specifically provides that unenforceability is a defense in an action involving the validity or infringement of a patent. See 35 U.S.C. § 282. The statute further provides that invalidity due to noncompliance with Part II of the Patent Code can be asserted as a defense in a patent infringement cause of action. Plaintiff in the instant case has asserted the very defenses enumerated in § 282 of the Patent Code. Specifically, plaintiff argues that the defendant obtained its foreign filing license through inequitable conduct. It is well settled that inequitable conduct on the part of a patent applicant renders the patent obtained unenforceable. See Walker Process v. Food Machinery, 382 U.S. 172, 176, 86 S.Ct. 347, 349, 15 L.Ed.2d 247 (1950); Precision Instruments Manufacturing Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d 1553, 1560 (Fed.Cir.1984). "Once a court concludes that inequitable conduct occurred all the claims  not just the particular claims to which the inequitable conduct is directly connected  are unenforceable." See J.P. Stevens & Co., Inc. v. Lex Tex Ltd., Inc., 747 F.2d at 1561. See also cases collected in 4 Chisum Patents, Ch. 1903[6] at 1985 n. 10 (1984). This is so because of "the strong public interest in guaranteeing that patent monopolies spring from backgrounds free from fraud or other inequitable conduct and that such monopolies are kept within their legitimate scope." See Precision Instruments, 324 U.S. at 818, 65 S.Ct. at 999.
Since inequitable conduct in the procurement of a patent renders the patent obtained invalid, it seems perfectly obvious that the procurement of a foreign filing license through the use of fraud should likewise render the entire patent invalid and thus make the patent incapable of being infringed. See 35 U.S.C. § 185; In Re Application of Gaertner, 604 F.2d 1348, 1351 (D.C.Pa.1979); Reinke Mfg. Co., Inc. v. Sidney Mfg. Corp., 594 F.2d 644, 645 (8th Cir.1979); Greening Nursery Co. v. J. & R. Tool & Mfg. Co., 376 F.2d 738, 742 (8th Cir.1967). Obtaining a license from the Patent Office prior to the filing of a patent application abroad is a condition of *151 patentability as specified in Part II of the Patent Code. Section 282 specifically makes non compliance with Part II of the Patent Code a defense to an infringement action. Thus, it would appear obvious that plaintiff does and should have standing to challenge the validity of Monsanto's patent pursuant to §§ 184 and 185.
The Court notes that Monsanto has asserted other grounds in support of its position that Stauffer has no standing. Specifically, Monsanto argues that Stauffer failed to show that it relied upon or suffered injury as a result of Monsanto's alleged inequitable conduct. Monsanto further argues that the interests that Stauffer wishes to protect fall outside the zone of interests sought to be protected under §§ 184 and 185. These arguments, as well as the previous arguments submitted by the defendant, still fail to convince the Court that plaintiff does not have standing.
Stauffer has alleged that it was the target of Monsanto's inequitable conduct. Stauffer argues that Monsanto knew that its patent was invalid under § 185 and therefore obtained a retroactive foreign filing license for the purpose of enforcing its patent against Stauffer. Thus, it is the opinion of the Court that Stauffer has, in fact, demonstrated that it was injured by Monsanto's alleged fraudulent activities.
In regard to Monsanto's assertion that Stauffer's interests fall outside the zone of interests of §§ 184-185, the Court again is of the opinion that Stauffer has shown that its interests do in fact fall within the zone of interests protected and/or regulated by the statute. The zone of interests test was designed to expand the number of persons "able to assert their rights in [federal] court." See Autolog Corporation v. Regan, 731 F.2d 25, 30 (D.C.Cir.1984). "[T]he zone of interest test requires some indicia, however slight, that the litigant before the court was intended to be protected, benefited, or regulated by the statute under which suit is brought." See Autolog Corporation, 731 F.2d at 29; see also Taylor v. Jones, 653 F.2d 1193, 1207 (8th Cir.1981); Churchill Truck Lines, Inc. v. U.S., 533 F.2d 411, 416 (8th Cir.1976). In the instant case, Monsanto argues that the interests which §§ 184-185 seek to protect are those of a national security nature. While it is certainly true that Congress sought to protect the national interests of this country by preventing the release of information that could prove to be detrimental, this is not to say that the violation of the statute can only be brought to the Court's attention when the national security of this country is involved.
Congress thought it so important that § 184 be complied with that the price for noncompliance was unenforceability of the patent. Compliance with § 184 for all individuals and companies seeking to file a patent application in a foreign land is mandatory. Thus, it would seem quite logical that those companies that are regulated by the Patent Code would arguably have an interest in seeing to it that other companies, especially their competitors, comply with the provisions of the Patent Code.
The most compelling reason supporting the Court's finding of standing is grounded in public policy. The grant of a patent confers upon the patentee a virtual monopoly with respect to the items covered by the patent. In order to insure that patents are issued free of any inequitable conduct, it would seem completely logical to allow an alleged infringer to bring inequitable conduct to the court's attention. Therefore, based on the foregoing, this Court concludes that plaintiff has met both the constitutional and prudential requirements for standing.

Attorney/Client Work Product Privilege.
It is Monsanto's position that even if the Court finds that Stauffer has standing, the information Stauffer seeks to obtain is protected by the attorney/client work product privilege. Stauffer argues that Monsanto's alleged fraudulent activities obviate any claim of privilege that Monsanto may have had. This Court, upon careful consideration, comes to the following conclusion *152 with respect to the attorney/client work product privilege.
The purpose behind the attorney/client privilege is to promote candor and full disclosure of pertinent information. See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). The communications between attorney and client must in some way relate to the request for legal advice and assistance. Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 144 (D.Del.1977). Thus, merely communicating information to an attorney does not in and of itself render the information privileged. See Diversified Industries, Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir.1977). In order to negate the attorney/client privilege, the party seeking to obtain information which may arguably be privileged must establish that the client seeking to invoke the privilege consulted and obtained the advice of counsel for the purpose of carrying out fraudulent activities. See In re International Systems & Controls Corp., 693 F.2d 1235, 1242 (5th Cir.1982); Hercules, Inc. v. Exxon Corp., 434 F.Supp. 136, 155 (D.Del. 1977). The person seeking to negate the privilege must make out a prima facie case of fraud. See In re International Systems & Controls Corp., 693 F.2d at 1242. The alleged fraudulent activities must be of such a serious nature so as to warrant the obviation of the privilege. Id. at 1242.
To bolster its argument, Stauffer has submitted to the Court the affidavit of C. Donald Quarforth, which, according to Stauffer, establishes the import of the information allegedly withheld from the Patent Office. It is the opinion of this Court, however, that Stauffer's allegations and the Quarforth affidavit are not enough to negate the attorney/client privilege. Just as there exists evidence which supports Stauffer's allegations of fraud, there also exists substantial evidence that no fraudulent activities occurred. Also, at this point in time, plaintiff has failed to convince the Court that the alleged fraudulent activities of Monsanto rise to the level of criminal conduct, thus necessitating piercing of the attorney/client privilege. See In re International Systems & Controls Corp., 693 F.2d at 1242; Research Corporation v. Gourmet's Delight Mushroom Co., 560 F.Supp. 811, 819 (E.D.Pa.1983). Therefore, this Court concludes that the defendant should and will be allowed to assert the attorney/client privilege with respect to certain of the discovery requests made by Stauffer.

Work Product Privilege.
The work product privilege protects materials prepared in anticipation of litigation from discovery. See Fontaine v. Sunflower Beef Carrier, Inc., 87 F.R.D. 89 (E.D.Mo.1980). The mere liklihood of litigation in the future is insufficient for invoking the privilege. Rather, the probability of litigation must be substantial and the commencement of the litigation imminent. See Hercules, Inc. v. Exxon Corp., 434 F.Supp. at 150-51. Materials which are prepared in the ordinary course of business do not fall within the work product exception. See Fontaine v. Sunflower Beef Carrier, Inc., 87 F.R.D. 89 (E.D.Mo.1980).
Some courts have held that documents which relate to the patent application process do not fall within the ambit of the attorney/client work product privilege. See Choat v. Rome Industries, Inc., 462 F.Supp. 728, 732 (N.D.Ga.1978); Sperry Rand Corp. v. International Business Machine Corp., 45 F.R.D. 287 (D.Del.1968). While the Court is of the opinion that not all of the documents generated in the patent application process are protected from discovery, in any given situation there can be documents which do in fact fall within the work product privilege. Therefore, the Court will not require the defendant to furnish all of the information requested by plaintiff. However, plaintiff is entitled to obtain the documents listed below, as they are not protected by the work product privilege. Accordingly,
IT IS HEREBY ORDERED that plaintiff's motion to compel is GRANTED IN PART. Defendant must submit the following *153 information: (1) Interrogatory No. 45. Defendant need only identify foreign licenses obtained from September, 1978 through June, 1982.
(2) Interrogatory No. 46, with the exception of subsection C.
(3) Interrogatory Nos. 47, 49, and 50. Defendant need only supply information from September, 1978 to June, 1982.
(4) Request to produce No. 12. Defendant need only produce the documents and things that relate to the Franz patent and the Franz patent application. (The Court notes that defendant has already agreed to submit this information.)
(5) Requests to produce Nos. 105 through 107. Defendant need only supply the documents requested from September, 1978 to June, 1982.
IT IS FURTHER ORDERED that defendants answer the following questions asked at depositions, which can be found on the following pages:

 (1) page 127, line 7
 (2) " 135, " 12
 (3) " 136, " 1
 (4) " 138, " 6
 (5) " 208, " 25
 (6) " 209, " 16
 (7) " 216, " 4
 (8) " 223, " 10
 (9) " 223, " 18
 (10) " 226, " 11
 (11) " 226, " 25
 (12) " 229, " 11
 (13) " 229, " 20
 (14) " 238, " 9
 (15) " 242, " 19
 (16) " 246, " 11
 (17) " 250, " 4
 (18) " 251, " 11
 (19) " 252, " 14
 (20) " 257, " 18
 (21) " 259, " 4
 (22) " 266, " 7

ORDER
This matter comes before the Court on Monsanto's motion for reconsideration of the Court's Order granting the nominal plaintiff, Stauffer, the right to present evidence first at trial.
Upon carefully reviewing the relevant case law cited by the defendant, the Court finds the arguments proffered by the defendant as to why it should be allowed to proceed first with the evidence to be highly persuasive. Under normal circumstances the plaintiff, having the burden of proof, should be allowed to present its case first. But since this is a patent infringement case, the general rules may not apply. Therefore, the Court will now hold in abeyance its previous decision allowing plaintiff to go forward with the evidence first. The Court notes motions for reconsideration ought to be rarely granted; but the Court is of the opinion that in this instance reconsideration is warranted, especially in view of the fact that the authorities cited by defendant appear to be unanimous in holding that patent infringement cases are unique and that a chronological history of the case might best be presented by hearing the defendant's evidence first.
The Court will give Stauffer an opportunity to respond to Monsanto's motion, but all memoranda must be submitted to the Court no later than August 5th, 1985.
SO ORDERED.