Abel GARCIA, Plaintiff,

v.

CITY OF EL CENTRO, A. Hernandez, C. Beltran, and Does 1 through 20, Defendants.

No. CIV. 01CV1235–J(JFS).

United States District Court, S.D. California.

March 24, 2003.

Michael R. Marrinan, Law Offices of Michael R. Marrinan, San Diego, CA, for plaintiff.

Deborah K. Garvin, McCormick and Mitchell, San Diego, CA, for defendants.

## ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF INTERVIEWS

STIVEN, United States Magistrate Judge.

## I. INTRODUCTION

On January 14, 2003, Plaintiff Abel Garcia ("Plaintiff") filed the instant motion to compel discovery of certain Defendant City of El Centro ("City") police department records relating to officers Alfredo Hernandez ("Hernandez") and Crispin Beltran ("Beltran"). Specifically, Plaintiff seeks interviews conducted by the City claims adjuster of the witnesses and participants in the incident which is the subject of the instant action.

Defendants City, Hernandez and Beltran (collectively "Defendants") filed their opposition to Plaintiff's motion on January 21, 2003. Defendants oppose the production of such documents, claiming that the documents are subject to the attorney-client and/or work product privileges.

For the reasons contained herein, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion to compel discovery.

## II. BACKGROUND

### A. Factual History

On or about October 20, 2000, Plaintiff and his girlfriend, Angie Espinoza ("Espinoza"), were attending a football game at Southwest High School in El Centro, California. Hernandez and Beltran were assigned to patrol the game. According to police reports, Hernandez and Beltran were dispatched to investigate a disturbance in the student parking lot at Southwest High School. Hernandez and Beltran received reports from witnesses in the area that Plaintiff had physically assaulted his girlfriend, Espinoza. Hernandez and Beltran claim that they approached Plaintiff because they believed Plaintiff was trying to leave the scene.[1] Hernandez and Beltran assert that they verbally ordered Plaintiff to stop but that he refused. Plaintiff claims that he heard Hernandez and Beltran run up behind him before tackling Plaintiff to the ground. Hernandez and Beltran claim that only after Plaintiff refused to stop, did they physically detain him. The officers contend that they took him to the ground only after he resisted and threatened the officers.

Plaintiff claims that Hernandez's and Beltran's treatment was so violent that he suffered a fractured and dislocated shoulder. Plaintiff claims that he was yelling in pain and pleaded with Hernandez and Beltran to remove the handcuffs, but that they refused to do so. Eventually an ambulance was summoned to the scene, and Plaintiff was transported to Pioneers Hospital where he was treated for a dislocated shoulder.

Hernandez and Beltran detained but did not arrest Plaintiff; however, criminal charges were later filed by the district attorney for the City of El Centro against Plaintiff for obstructing an officer in the performance of his duties and for domestic violence.[2] All charges against Plaintiff were later dismissed.

On July 10, 2001, Plaintiff filed the instant lawsuit alleging that Defendants treatment of Plaintiff on October 20, 2000 constitutes excessive force in violation of 42 U.S.C. § 1983.

### B. Procedural History

On October 28, 2002, Plaintiff served on Defendants a request for production of documents which included interviews conducted by the City claims adjuster of the witnesses and participants to the incident which is the subject of the instant action. Defendants objected to the production of these documents under the attorney-client and work product privileges. The parties met to attempt to resolve the issue without the Court's intervention, but were unable to do so.

On December 18, 2002, the Court conducted a Mandatory Settlement Conference with the parties. At the December 18, 2002 conference, the parties raised the discovery dispute regarding the above mentioned items. Pursuant to the parties' arguments at the December 18, 2002 conference, the Court issued an order requiring the parties to brief the issue.

Pursuant to the Court's briefing schedule, Plaintiff filed his motion to compel discovery on January 9, 2003. Plaintiff seeks production of the above referenced witness and participant interviews. On January 21, 2003, Defendants filed their opposition to Plaintiff's motion to compel. The Court conducted a hearing on Plaintiff's motion to compel on January 29, 2003.[3]

---

1. The Court should note that according to Defendants' statement of the facts, Plaintiff was attempting to leave the parking lot and Espinoza was following him when police approached. *See* Doc. No. 38 at 2.

2. The Court notes that criminal charges were not filed against Plaintiff until after Plaintiff filed his claim against the City of El Centro.

3. Other issues were resolved summarily at the hearing with the Court ordering that: 1) Defendant City produce the Citizens' complaint filed against Beltran to the Court *for in camera* review to determine its relevancy to the instant action and whether to order it produced in discovery; and, 2) pursuant to Plaintiff's discovery requests and motion to compel, Defendant City produce the training records (including certificates of

## III. STANDARD OF LAW

Pursuant to Federal Rule of Civil Procedure 26(b),

> [p]arties may obtain discovery regarding any matter, *not privileged,* that is relevant to the claim or defense of any party, including the existence, ... and location of any books, documents, or other tangible things .... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1) (emphasis added). Pursuant to Rule 34, parties can request for any other party to "(1) produce and permit the party making the request ... to inspect and copy, any designated document ... or to inspect and copy, test, or sample any tangible things which constitute or contain matter within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed.R.Civ.P. 34(a)(1). "The Party upon whom the request is served shall serve a written response within 30 days after the service of the request." Fed.R.Civ.P. 34(b).[4]

> If a party ... in response to a request for inspection submitted under Rule 34, fails to respond that inspection will be permitted as requested or fails to permit inspection as requested, the discovering party may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make discovery in an effort to secure the information or material without court action.

Fed.R.Civ.P. 37(a)(2)(B).

## IV. ANALYSIS

### A. Witness and Participant Interviews

#### 1. Standard of law—attorney-client privilege

██ "The party asserting the attorney-client privilege has the burden of proving

that the privilege applies to a given set of documents or communications. To meet this burden, a party must demonstrate that its documents [or communications] adhere to the essential elements of the attorney-client privilege adopted by this court." *U.S. v. The Corporation,* 974 F.2d 1068, 1070 (9th Cir. 1992). The eight essential elements necessary to assert an attorney-client privilege are: (1) legal advice of any kind was sought, (2) the legal advice was sought from a professional legal adviser in his capacity as an advisor, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at the client's instance, permanently protected (7) from disclosure by the client or by the legal advisor, (8) unless the protection is waived. *See id.* at 1071, n. 2.; *see also U.S. v. Martin,* 278 F.3d 988, 999 (9th Cir.2002).

#### 2. Analysis—attorney client privilege

Defendants argue that the claims adjuster's interviews of the participants, specifically of Officers Beltran and Hernandez, are privileged under the attorney-client doctrine, and as such are not subject to discovery.

██ However, "[b]ecause it impedes full and free disclosure of the truth, the attorney-client privilege is strictly construed." *Martin,* 278 F.3d at 999. In the instant case, the communications that took place were between the claims adjuster and Officers Beltran and Hernandez. Even if the interviewing claims adjuster were an attorney (there has been no evidence offered that the interviewing claims adjuster is in fact an attorney), the attorney-client privilege would not attach because Officers Hernandez and Beltran were not seeking legal advice from the claims adjuster. The claims adjuster's capacity here was principally to determine whether to pay Plaintiff's claim, not to offer legal advice to Officers Beltran and/or Hernandez.

Additionally, the claims adjuster was conducting the interviews on behalf of its client, Defendant City, not Officers Beltran and/or Hernandez.[5]

---

completion and training checklists) for officers Hernandez and Beltran.

4. As this case is predicated upon this Court's federal question jurisdiction, federal law governs the privilege issues asserted.

5. Since the City is also a party to the instant suit, it might be able to assert the attorney-client privilege if the eight elements discussed above were shown to be present. They have not made such a showing.

Accordingly, the Court FINDS that no attorney-client privilege attaches to the claims adjuster's interviews of Officers Beltran and/or Hernandez in relation to the instant action.

### 3. Standard of law—work product rule

The federal work product doctrine was originally established in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and is now codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) states:

> a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and *prepared in anticipation of litigation or for trial* by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3)(emphasis added). The rule further provides that the court shall "protect against disclosure of the *mental impressions, conclusions, opinions, or legal theories* of an attorney or other representative of a party concerning litigation." *Id.* (emphasis added).

 Pursuant to Rule 26(b)(5), when a party seeks to withhold production of discoverable materials under the work product privilege,

> the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed.R.Civ.P. 26(b)(5). The party asserting the work product privilege bears the burden of proving that the material withheld meets the standards established for material to be classified as work product. Specifically, the party asserting the privilege must show that the materials withheld are: 1) documents and tangible things; 2) prepared in anticipation of litigation or for trial; and, 3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege. *See* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024; *see also* Fed.R.Civ.P. 26(b)(3); *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *Onwuka v. Federal Express Corp.*, 178 F.R.D. 508, 512 (D.Minn. 1997). If the work product privilege is found to apply, the burden shifts and the party seeking discovery must show that substantial need of the materials exists and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by an alternative method. *See* Fed.R.Civ.P. 26(b)(3). Opinion work product, containing an attorney's mental impressions or legal strategies, enjoys nearly absolute immunity and can be discovered only in very rare circumstances. *In re Murphy*, 560 F.2d 326, 337 (8th Cir.1977).

 However, "[b]ecause the work product doctrine is intended only to guard against the divulging of attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or *facts contained within the work product*." *Onwuka*, 178 F.R.D. at 513 (citing *Phillips Electronics North America Corp. v. Universal Electronics, Inc.*, 892 F.Supp. 108(D.Del.1995)) (emphasis added). Only when a party seeking discovery attempts to ascertain facts, *"which inherently reveal the attorney's mental impression,"* does the work product protection extend to the underlying facts. *Id.* (emphasis added); *see also* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2024 (pocket part).

### 4. In anticipation of litigation

Plaintiff argues that the witness and participant interviews should be produced because they only relate to the underlying facts and were not taken in anticipation of litigation. Plaintiff argues that because the City claims adjuster's investigation of the matter is analogous to a citizen's complaint filed with the internal affairs division of a police de-

partment, any interviews that result from that investigation are not taken in anticipation of litigation by an attorney, but rather are taken as part of the administrative procedures in the ordinary course of business designed to determine if there has been any officer wrongdoing. *See Miller v. Pancucci,* 141 F.R.D. 292 (C.D.Cal.1992).[6] Plaintiff maintains, similar to the responsibility of the internal affairs division of the police department, the claims adjuster's role in this incident was to determine, after the administrative claim was filed, whether it was in the City's best interest to proceed to litigation or to settle the claim and avoid litigation altogether. Plaintiff argues that this process occurred before the lawsuit was filed, and before the City's attorney became involved in the case. Plaintiff argues that the claims adjuster's interviews of the witnesses are not taken in anticipation of litigation, but rather are taken in the ordinary course of business to determine if litigation is warranted.

Defendants counter that the witness and participant interviews are protected under the work product privilege. Defendants state that the claims adjuster in the instant case did not begin his interview/investigation process until after Plaintiff had filed his administrative claim. Defendants maintain that because an administrative claim was filed, the claims adjuster conducted his interviews in anticipation of litigation and in essence was Defense Counsel's agent in the process of collecting evidence for trial, despite the fact that Defense Counsel was not yet involved in the process when the interviews were conducted. *See Deuterium Corp. v. U.S.,* 19 Cl.Ct. 697 (Cl.Ct.1990) (determining that because an "administrative claim presents the specter of litigation," documents prepared by attorneys or employees in antici-

pation of the filing of a lawsuit, after an administrative claim was filed, are protected under the work product rule).[7] Defendants argue that because the interviews that Plaintiff seeks are protected by the work product privilege and/or the attorney-client privileges, the Court should deny Plaintiff's motion to compel.

The case law is split on when documents are prepared in anticipation of litigation for purposes of the work product rule. In *United States v. Davis,* 636 F.2d 1028 (5th Cir. 1981), the Court held that "litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Id.* at 1040. However, other courts have stated that for documents to be prepared in anticipation of litigation, there must be a substantial probability that litigation will commence and that litigation is imminent. *See Moore v. Tri–City Hosp. Auth.,* 118 F.R.D. 646 (N.D.Ga.1988); *Arkwright Mutual Ins. Co. v. National Union Fire Ins. Co.,* 771 F.Supp. 149 (S.D.W.Va.1991); *Stauffer Chem. Co. v. Monsanto Co.,* 623 F.Supp. 148 (E.D.Mo.1985). This Court was unable to find any Ninth Circuit cases which precisely define the criteria required to determine if a document was prepared "in anticipation of litigation." Consequently, this Court chooses to analyze the particular factual elements of the instant case to determine whether the interviews were collected in anticipation of litigation. *See Simon v. G.D. Searle & Co.,* 816 F.2d 397, 401 (8th Cir.1987) (stating that the determination of whether documents are prepared in anticipation of litigation is a factual determination); *see also Mission National Insurance Co. v. Lilly,* 112 F.R.D. 160, 165 (D.Minn.1986) (stating that

---

6. In *Miller,* the Court, dealing with a discovery request for internal affairs documents that were objected to on work product grounds, stated: [t]he police department's internal affairs section, which investigates tort claims, including investigation of claims involving police officer misconduct, was established for the purpose of conducting complete, objective investigations and for making fair, impartial evaluations of complaints against police department personnel.... Citizens complaints are investigated by Internal Affairs regardless of whether litigation is anticipated. It is done in the regular course of business. Documents prepared in the regu-

lar course of business do not fall under the work product rule and thus are not immune from discovery.
*Id.* at 303. In *Miller,* the Court determined that internal affairs records sought by the plaintiff were discoverable and ordered them produced.

7. Although it is not clear from the opinion what documents were sought in the *Deuterium* case, there was an extensive discussion in relation to the work product rule of documents that dealt with mental impressions and/or processes. *See Deuterium,* 19 Cl.Ct. at 700.

the most sound manner to determine if documents are subject to the work product rule is requiring a case-by-case analysis, considering the unique factual basis of the given problem).

Many courts have struggled with the problem of determining the scope of the work product privilege as it applies to insurance file records or insurance investigations of an insured's claim.

> Courts have observed that the application of the work product doctrine to documents prepared by insurance companies during claims investigations is difficult because the nature of the insurance business is such that an insurance company must investigate a claim prior to determining whether to pay its insured, and thus pre-litigation investigation is the routine business of insurance companies.

*St. Paul Reinsurance Company, Ltd. v. Commercial Financial Corp.,* 197 F.R.D. 620, 635 (N.D.Iowa 2000) (internal quotations omitted). Stated differently, "[a] more or less routine investigation of a possibly resistible claim is not sufficient to immunize [under the work product rule] an investigative report developed in the ordinary course of business." *Janicker v. George Washington Univ.,* 94 F.R.D. 648, 650 (D.D.C.1982). This is especially true when there is no evidence in the record that an attorney was hired at the time of the investigation or that an attorney requested the preparation of a document. *See Tejada Fashions Corp. v. Yasuda Fire and Marine Ins. Co. Ltd.,* 1984 WL 500, *3 (S.D.N.Y.1984); *see also Holton v. S & W Marine, Inc.,* 2000 WL 1693667, *2 (E.D.La. 2000) (stating that a "third-party insurance adjustor attempting to ascertain exactly what happened from eye-witnesses is not in the same position as an attorney" who might annotate mental impressions, which are protected by the work product rule); *but see Long v. Anderson University,* 204 F.R.D. 129 (S.D.Ind.2001) (stating that an insurance adjuster's interviews were work product once plaintiffs had threatened litigation and the

hopes of the parties resolving the matter before litigation were abandoned).

### 5. Analysis—anticipation of litigation

In the instant case, Plaintiff filed an administrative claim through an attorney on December 11, 2000, about nine weeks after the incident, asserting that Officers Beltran and Hernandez used excessive force in violation of 42 U.S.C. § 1983. Once the administrative claim was filed, the insurance company for Defendant City sent its insurance adjuster to investigate the matter and interview both the witnesses and the participants to the events of October 20, 2000. The insurance adjuster, in accordance with the nature of his employment, was to determine whether to pay Plaintiff's claim, or to reject the claim and risk the possibility that Plaintiff would file a lawsuit to recover on his claim. The City rejected Plaintiff's administrative claim on January 23, 2001.[8] Because the interviews were conducted over an eleven month time span, each interview must be analyzed independently.

### a. Officers Hernandez and Beltran

As stated above, the administrative complaint was filed on December 11, 2000. The claims adjuster conducted his interviews of Officers Hernandez and Beltran on January 10, 2003. *See* Def. Counsel's Letter of February 24, 2003. Plaintiff's claim was rejected on January 23, 2001. Consequently, the Court finds Officers Beltran and Hernandez were interviewed for a determination of whether the City's insurance carrier was going to accept or reject Plaintiff's claim. At the time the insurance adjuster conducted his investigation and interviewed Hernandez and Beltran, Defendants had not yet retained legal representation for the instant action.[9] Additionally, when Defendant City's claims adjuster interviewed Hernandez and Beltran, he was acting in the ordinary course of business of the insurance company which insures Defendant City. Accordingly, the Court **FINDS** that the claims adjuster's interviews

---

8. Although not addressed by either party, the Court recognizes that there was, at that time, a possibility, however remote, that once the insurance adjuster recommended rejecting Plaintiff's claim, that Plaintiff would have chosen not to pursue the matter through litigation.

9. Although Defendant City employs attorneys on a full time basis, from the record, it does not appear that this case had been assigned to a particular attorney or that any attorney employed by the City was even made aware of the claim until after the actual *lawsuit* was filed.

of Hernandez and Beltran were not conducted in anticipation of litigation and **ORDERS** Defendants to produce the *factual portions* of the claims adjuster's interviews of Hernandez and Beltran.[10]

### b. Sergeant Gordon Johnson

As stated above, the administrative complaint was filed on December 11, 2000. The claims adjuster conducted his interview of Sergeant Gordon Johnson ("Johnson") on January 11, 2003. *See* Def. Counsel's Letter of February 24, 2003. Plaintiff's claim was rejected on January 23, 2001. Consequently, the Court finds Sgt. Johnson was interviewed for a determination of whether the City's insurance carrier was going to accept or reject Plaintiff's claim. At the time the insurance adjuster conducted his investigation and interviewed Johnson, Defendants had not yet retained legal representation for the instant action.[11] Additionally, when Defendant City's claims adjuster interviewed Johnson, he was acting in the ordinary course of business of the insurance company which insures Defendant City.

Accordingly, the Court **FINDS** that the claims adjuster's interview of Johnson was not conducted in anticipation of litigation and **ORDERS** Defendants to produce the *factual portions* of the claims adjuster's interview of Johnson.[12]

### c. Abel Garcia

A party may obtain without the required [substantial need] showing a statement concerning the action or its subject matter previously made by that party.... For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral

statement by the person making it and contemporaneously recorded.

Fed.R.Civ.P. 26(b)(3). "These provisions effectively exclude from work product protection a party's own statement taken by another party or its agent." 10 Fed. Proc., L.Ed. § 26:158.

In the instant case, Plaintiff seeks discovery of the statement he made to the City's insurance adjuster. It does not matter that the statement was given after the administrative claim was rejected because "a party's own statement is discoverable as a matter of right." *Id.*

Accordingly, the Court **FINDS** that Plaintiff's interview is discoverable and **ORDERS** Defendants to produce the *factual portions* of the claims adjuster's interview of Plaintiff.[13]

### d. Espinoza, Staton, Calatayud, Marin and Alvarado

With respect to the remaining witness statements taken by the City's claim adjuster, specifically those of Angie Espinoza, Michael Staton ("Staton"), Ricky Calatayud ("Calatayud"), Aristio Marin ("Marin") and Leo Alvarado ("Alvarado"), the Court FINDS that they were taken in anticipation of litigation.

With respect to Espinoza's recorded statement, although it was taken on March 27, 2001, before Plaintiff had filed the instant lawsuit, the interview took place after Plaintiff's claim had been rejected, when the parties had little hope of resolving the issues other than through litigation. Thus, any interview taken by the City's claims adjuster after the rejection of the administrative claim was taken with an eye toward litigation. Accordingly, the Court **FINDS** that Espinoza's interview was taken in anticipation of litigation and therefore is protected by the work product rule.[14]

---

10. *See St. Paul Reinsurance Co.,* 197 F.R.D. at 632 (citing *Mission Nat'l. Ins.,* 112 F.R.D. at 164) for the proposition that facts contained in an insurance adjuster's investigations are discoverable. Conversely, if the statements or records of interviews contain mental impressions of the adjuster, those portions may be deleted.

11. *See* p. 592, n. 7, *supra.*

12. *See* p. 593, n. 8, *supra.*

13. *See* p. 593, n. 8, *supra.*

14. Because the instant lawsuit had not been filed, the Court assumes that the City had not retained an attorney to defend against the instant action when the City claims adjuster interviewed Espinoza. However, there was no purpose for

With respect to the City claims adjuster's interviews of Staton and Calatayud, those interviews were both conducted on June 18, 2001. Plaintiff filed the instant lawsuit on July 10, 2001, just short of the six month period permitted for Plaintiff to file a lawsuit after rejection of the administrative claim. Here again, because the parties had little hope of resolving the issues other than through litigation, the claims adjuster interviewed Staton and Calatayud with an eye toward litigation. Accordingly, the Court **FINDS** that the interviews were taken in anticipation of litigation and are protected by the work product rule.[15]

With respect to the City claims adjuster's interviews of Marin and Alvarado, those interviews were not conducted until after the lawsuit was filed. Hence, the Court **FINDS** that those interviews were clearly taken in anticipation of litigation and are protected by the work product rule.

Accordingly, the Court **FINDS** that the City claims adjuster's interviews of Espinoza, Staton, Calatayud, Marin and Alvarado were taken in anticipation of litigation and are protected by the work product rule.

### 6. Substantial need

Because it finds that certain interviews, namely those of Espinoza, Staton, Calatayud, Marin and Alvarado are protected by the work product rule, the Court now conducts the substantial need analysis established by Rule 26(b)(3).

### a. Standard of law

If documents or other tangible things constitute work product, then the party seeking discovery may compel such discovery upon a "showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed.R.Civ.P. 26(b)(3).

There is a split of authority among courts regarding whether the mere passage of time is enough to establish substantial need under Rule 26(b)(3). In *Holton,* that court found, "statements taken from the witnesses shortly after accidents are unique catalysts in the search for truth" because they provide a more accurate portrait of the facts that cannot be recreated or duplicated by a deposition that relies on a witness' memory. *Holton,* 2000 WL 1693667 at *4. Although several courts have held that the mere passage of time *is* enough to meet the substantial need required to compel production of documents protected as work product (*see id.; see also Tiernan v. Westext Transport, Inc.,* 46 F.R.D. 3, 5 (D.R.I.1969) (holding that statements taken shortly after an incident are more acute than depositions taken later in time, helping to overcome the work product privilege); *Hamilton v. Canal Barge Co., Inc.,* 395 F.Supp. 975, 977 (E.D.La.1974) (stating that the mere lapse of time is enough to justify discovery of documents protected by the work product rule)[16]); other courts have held that the mere passage of time is not sufficient to establish substantial need absent some additional factor(s). *See Almaguer v. Chicago R.I. & P.R.,* 55 F.R.D. 147, 150 (D.Neb.1972) (stating that *more* than the mere passage of time is necessary to establish the need required to overcome the work product protection); *see also Banks v. Wilson,* 151 F.R.D. 109, 113 (D.Minn.1993) (stating that if the mere passage of time was sufficient to create the substantial need required, then the express preconditions of Rule 26(b)(3), which requires that a witness be unavailable or that their statement or its equivalent could not be obtained by an alternative method without undue hardship, would be meaningless).

Additionally, even those cases which hold that the mere passage of time is sufficient to establish substantial need, generally require that the protected statement sought in discovery have been taken shortly after the

the claims adjuster's interview of Espinoza other than to collect evidence for possible litigation.

**15.** *See* n. 14, *supra.*

**16.** In *Hamilton,* the Court stated that, even though a statement is given closer in time to the

date of the incident in question, it does not necessarily constitute the substantial need required by Rule 26(b)(3) if the closer in time statement is given more than a few days after the actual incident. *See Hamilton,* 395 F.Supp. at 978.

event took place. *See Hamilton,* 395 F.Supp. at 978 (if the closer in time statement is given more than a few days after the events themselves, then the mere passage of time is not enough to establish the required need).

### b. Analysis

Plaintiff argues that the claims adjuster's interviews that fall under the work product protection should be ordered produced because substantial need exists to compel their production. Plaintiff asserts that although it would be possible for him to depose the above mentioned witnesses today, the claims adjuster's interviews are necessary in order to refresh the recollection of those witnesses. Plaintiff contends that the claims adjuster's interviews, taken anywhere from fifteen to twenty-four months ago, may contain information that has faded from the witnesses' memories and that would not be contained in any depositions taken presently. Plaintiff advances that the lack of details would create an incomplete deposition that might hinder plaintiff's case.

Further, Plaintiff contends that these missing details might serve to hinder the presentation of plaintiff's case in chief. Plaintiff claims the interviews at issue should be produced in order to ensure a consistent and complete record and that all necessary information is made available for the parties to adequately prosecute the case. Plaintiff maintains that the claims adjuster's interviews should be ordered produced.

Defendants counter that Plaintiff's motion to compel the production of the City claims adjuster's interviews should be denied because Plaintiff fails to show substantial need exists. Defendants argue that they were informed of witnesses Espinoza and Calatayud from Plaintiff's prior counsel at or before the time the administrative claim was filed. Defendants assert that Plaintiff had ample opportunity to interview these witnesses shortly after the incident giving rise to the instant litigation, but apparently failed to conduct such interviews. Hence, Defendants adduce that Plaintiff fails to show the re-

quired substantial need as it relates to Espinoza and Calatayud.

#### i. Angie Espinoza

■ Addressing first the claims adjuster's interview of Espinoza; the claims adjuster interviewed Espinoza in March of 2001. This was approximately five months after the incident that gave·rise to the instant litigation and twenty-four months prior to any deposition that might be taken by Plaintiff presently. However, there is no evidence presented that Plaintiff could not have interviewed or deposed Espinoza at some time immediately after the October 20, 2000 incident.[17] Plaintiff was fully aware of Espinoza's role and ·it was foreseeable that her testimony would be important to Plaintiff's case in chief.

■ Additionally, when a party argues that substantial need exists because of the passage of time, the party seeking discovery must make a showing that the passage of time was not caused by avoidable negligence on their part. *See* Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine,* p. 553 (4th ed.2001). Plaintiff makes no showing that his failure to depose Espinoza closer in time to the events litigated here was not caused by avoidable neglect. Plaintiff carries the burden of showing that substantial need exists for the witness interviews to be produced in discovery. Because, under the particular facts presented here, the mere passage of time is not sufficient justification, and Plaintiff makes no showing that his failure to depose Espinoza was not caused by avoidable neglect, Plaintiff fails to meet his burden.

Accordingly, the Court **DENIES** Plaintiff's motion to compel with respect to the claims adjuster's interview of Espinoza.

#### ii. Ricky Calatayud

The Court next turns to the claims adjuster's interview of Mr. Calatayud. Mr. Calatayud was interviewed on June 18, 2001, approximately eight months after the October

---

17. In fact, it appears that Plaintiff's counsel and Plaintiff have interviewed and discussed the case with Espinoza on several occasions.

20, 2000 incident. Again, Plaintiff advances that substantial need exists because of the necessity to have a complete record to adequately present his case in chief. *See* p. 596, *supra.*

Defendants again assert that they were made aware of Mr. Calatayud from Plaintiff's previous counsel. Defendants maintain that because Plaintiff knew of Calatayud before Defendants, Plaintiff had ample opportunity to depose Calatayud about the same time, if not earlier, than when the claims adjuster conducted his interview. Therefore, Defendants contend that Plaintiff fails to show substantial need and that Plaintiff's motion to compel should be denied.

With respect to Mr. Calatayud, the claims adjuster did not conduct his interview until eight months after the events of October 20, 2000. This time span is far greater than what the case law recognizes as establishing that a closer in time statement creates substantial need.[18] Accordingly, under these facts, the mere passage of time is not sufficient to create substantial need.

Additionally, as previously stated, when a party argues that substantial need exists because of the passage of time, the party seeking discovery must make a showing that the passage of time was not caused by avoidable negligence on their part. *See* Edna Selan Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine*, p. 553 (4th ed.2001). With respect to Mr. Calatayud, Plaintiff does not dispute Defendants' assertion that Defendants were made aware of Mr. Calatayud by Plaintiff through his prior attorney. The parties have presented no other evidence to assert that Plaintiff did not previously have an opportunity to interview Mr. Calatayud. Under the facts presented here, Plaintiff makes no showing that his failure to interview Calatayud closer in time to the events of October 20, 2000 was not caused by avoidable neglect.

Accordingly, the Court **FINDS** that Plaintiff fails to meet his burden of showing that substantial need exists and **DENIES** Plain-

tiff's motion to compel the claims adjuster's interview of Calatayud.

### iii. Michael Staton

With respect to Michael Staton, Plaintiff repeats the arguments articulated above with respect to the existence of substantial need. *See* p. 596, *supra.* Most applicable is Plaintiff's argument that Staton's testimony is necessary to ensure that Plaintiff has all information necessary to present his case in chief.

Defendants again counter that Plaintiff's assertion that the claims adjuster's interview is necessary to impeach the witness if called to testify at trial does not establish the substantial need required by Rule 26(b)(3). Defendants maintain that because Plaintiff has not shown substantial need exists, Plaintiff's motion to compel should be denied.

Mr. Staton's statement was taken on June 16, 2001, approximately eight months after the October 20, 2000 incident. Neither party offers any evidence as to whether Plaintiff had an opportunity to interview Mr. Staton closer in time to the events that gave rise to the instant litigation or whether any failure by Plaintiff to take a statement from Staton was or was not caused by avoidable neglect.

 As established above, Plaintiff carries the burden of proof that substantial need exists to compel production of interviews protected by the work product rule. *See* Fed. R.Civ.P. 26(b)(3). Given, in the instant case, that Staton's statement made closer in time was not taken until eight months after the events of October 20, 2000, this Court adopts the view that the mere passage of time is not sufficient to make the required showing.[19]

Accordingly, the Court **FINDS** that Plaintiff fails to establish that substantial need exists and **DENIES** Plaintiff's motion to compel with respect to the claims adjuster's interview of Staton.

---

**18.** See p. 595, n. 16, supra.

**19.** It is questionable whether Staton' recollection of the details of the events of October 20, 2000

will be any worse today than when the claims adjuster interviewed him on June 16, 2001.

#### iv. Marin and Alvarado

With respect to Aristio Marin and Leo Alvarado, both of these witnesses were interviewed by the claims adjuster on November 21, 2001, more than thirteen months after the October 20, 2000 incident. Marin was not even a witness to the incident, but rather was interviewed by Defendants in connection with an altercation between him and Plaintiff, independent of the events that gave rise to the instant litigation.

Additionally, even if Marin and Alvarado did witness the events that transpired on October 20, 2001, it is unlikely that the interviews conducted by the claims adjuster thirteen months after the incident would contain significantly more detail than any depositions conducted today.

Accordingly, the Court **FINDS** that Plaintiff has not demonstrated that substantial need exists and **DENIES** plaintiff's motion to compel in relation to the claims adjuster's interviews of Marin and Alvarado.

### V. CONCLUSION

For the reasons stated, the Court **HEREBY GRANTS IN PART AND DENIES IN PART** Plaintiff Garcia's motion to compel production of witness and participant interviews taken by the City's claims adjuster. The Court further **ORDERS**:

1. Defendants shall produce the factual portions of the City claims adjuster's interviews of Alfredo Hernandez, Crispin Beltran, Abel Garcia and Gordon Johnson, taken in connection with the events that transpired on October 20, 2000 and which gave rise to the instant litigation [20];

2. Defendants shall be permitted to redact the transcripts or notes of said interviews for any mental impressions and/or legal theories that the claims adjuster might have made in connection with the taking of said interviews;

3. Defendants shall lodge with the Court both the redacted and the unredacted versions of the transcripts or notes produced in order to effectively and efficiently resolve any potential conflicts that might arise between the parties;

4. Actual production of the subject documents may be delayed for a period of ten days from the date of this order so as to provide Defendants with an opportunity to appeal this order, if desired; and,

5. The Court **DENIES** Plaintiff's motion with respect to the claim's adjuster's interviews of Angie Espinoza, Ricky Calatayud, Michael Staton, Aristio Marin and Leo Alvarado.

**IT IS SO ORDERED**

---

**20.** The Court notes that its finding only applies to the factual descriptions of the events contained in the witness interviews and does not apply to *any* mental impressions or legal theories that might be contained in the transcripts or notes of those interviews.